IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **ISRAEL CANTU HERRERA,** | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | C.A. NO. C-04-532 |
| | § | |
| **DOUG DRETKE, Director TDCJ-ID,** | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division ("TDCJ-ID"), and currently is incarcerated at the Bill Clements Unit in Amarillo, Texas. Proceeding *pro se* and *in forma pauperis*, petitioner filed this petition pursuant to 28 U.S.C. § 2254 (D.E. 1). The underlying conviction which is the subject of the petition is a 2003 Nueces County conviction for the felony offense of murder. Petitioner makes the following allegations: (1) he was incompetent to enter a plea of guilt; (2) the conviction was obtained by an unconstitutional failure to disclose evidence favorable to the defendant; (3) he was denied effective assistance of counsel; (4) he was denied the right to appeal; (5) he received an illegal sentence; (6) the indictment and information in his case were invalid. On February 25, 2005 respondent filed a motion for summary judgment to which petitioner responded on March 24, 2005 (D.E. 14, 16).

## BACKGROUND

Petitioner was charged with murder in the 148th District Court of Nueces County, Texas, in Cause No. 00-CR-3685E(S), styled *The State of Texas v. Israel Herrera*. He was accused of having stabbed to death his girlfriend on October 17, 2000 (Ex Parte Herrera, App. No. 35,205-

07, pp. 74, 123-124).[1]  On August 12, 2002 a jury found petitioner incompetent to stand trial and he was committed to the Maximum Security Unit of North Texas State Hospital in Vernon, Texas (Id. at 81-84).

On January 4, 2002 petitioner underwent a psychiatric evaluation by Carlos R. Estrada, M.D.  Dr. Estrada noted that petitioner had been at the Vernon Facility from September 23, 2002 until November 26, 2002 where he received treatment for his mental condition, consisting of counseling and medication in the form of Zyprexa, 20 mg. at bedtime and Trileptal, 300 mg. in the morning and 600 mg. at night.  A doctor at the facility determined that petitioner had improved markedly and he was sent back to the Nueces County jail so that he could stand trial for the murder (Id. at 65, 67-68).

Dr. Estrada examined petitioner and found him to be cooperative, open, talkative and pleasant.  He no longer was distracted, guarded, suspicious, tense, or anxious as he had been when Dr. Estrada examined him at the time of his first trial, except when the specific incident of murder was discussed and he became anxious, worried, restless and afraid (Id. at 67, 71).  He appeared to be well-oriented and had an average memory for recent and remote events and average general knowledge but low average intelligence, sometimes on the borderline mental retardation level.  He was able to understand questions, listen patiently and respond rationally and to the point.  There was no evidence of a thought disorder, delusional thinking or paranoid ideas (Id. at 71).  He was trusting and cooperative with his attorney and aware of the role of the different elements of the court process and the trial.  He had discussed his defense with his attorneys and was prepared to go to trial (Id. at 72).

---

[1]The state court records were filed with respondent's motion for summary judgment, D.E. 14.

Dr. Estrada opined that petitioner was competent to stand trial. He also was of the opinion that at the time of the murder petitioner suffered from a psychotic condition that led him to believe that his girlfriend had been taken over by Satan and transformed into a vampire and intended to kill him and that he needed to kill the vampire to defend himself and others. Dr. Estrada thought petitioner thought that what he was doing was right and did not know it was wrong (Id. at 73).

Petitioner was reindicted in Cause No. 00-CR-3685-E (S1) and on February 26, 2003 he pleaded guilty to murder and was sentenced to 30 years in TDCJ-ID. In addition a finding was made that petitioner was a repeat felony offender (Id. at 74-77). As part of his plea agreement the state agreed to recommend that plaintiff be placed at the Skyview facility (Id. at 131-132).

Petitioner did not appeal his conviction. On March 8, 2004 petitioner filed an application for habeas corpus relief in state court (Id. at 2). The Texas Court of Criminal Appeals denied the application without written order on August 25, 2004 (Id. at cover). Petitioner filed this application pursuant to 28 U.S.C. § 2254 on October 19, 2004.[2]

## APPLICABLE LAW

**A. Statute of Limitations**

Respondent seeks to dismiss petitioner's application for habeas corpus on the grounds that the application was filed outside the one-year limitation period set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Regarding the deadline for filing an application for writ of habeas corpus, the statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

---

[2] Petitioner executed and mailed his petition on October 19, 2004. Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988).

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244. Petitioner filed his current application for writ of habeas corpus on December 21, 2003, and so is subject to its provisions. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Petitioner's conviction became final on March 26, 2003, when the thirty-day period for filing a petition for discretionary review expired. Tex. R. App. P. 68.2(a).[3] Petitioner had until March 26, 2004, to file his petition in federal court. 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998). Petitioner did not file his petition until October 19, 2004, almost seven months after the limitations period expired.

Under 28 U.S.C. § 2244(d)(2) and Coleman v. Johnson, 184 F.3d 398 (5th Cir. 1999), petitioner would be entitled to equitable tolling from the time he filed his state habeas application on March 19, 2004 until it was denied on August 25, 2004, a period of 170 days. 28 U.S.C. §

---

[3]Formerly Tex. R. App. P. 202(b) (1996) (eff. September 1, 1996).

2244(d)(2). Adding the tolling period to the original deadline extended the deadline to file to September 13, 2004. Petitioner did not file his federal petition until October 19, 2004.

In addition to being tolled while a motion for post-conviction relief or other collateral review is pending, the statute of limitations also is subject to equitable tolling in rare and exceptional cases. Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)(citing Davis v. Johnson, 158 F.3d 806, 810-811 (5th Cir. 1998)). Ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not present a rare and exceptional circumstance that justifies equitable tolling. Fisher, 174 F.3d at 714.

Under certain circumstances, mental incompetency might support equitable tolling of a limitation period. Id. at 715 (citing Hood v. Sears Roebuck & Co., 168 F.3d 231, 232-33 (5th Cir. 1999). Petitioner argues that he missed the relevant deadlines because of the side effects of the medications he was taking. He asserts that the drugs made him unable to understand his legal rights and obligations. When he arrived at TDCJ-ID, his psychotropic drugs were changed from Trileptal and Zyprexa to Haldol, Prozac and Cogentin, and he asserts that the side effects of the drugs caused him to be paranoid and nervous most of the time and caused him to have defective thinking. He complained to the psychiatrist about the side effects and said he no longer wanted to take the drugs. The Prozac was discontinued on June 17, 2003 and the Haldol and Congentin were discontinued on June 26, 2003 (D.E. 16, pp. 2-3 and Ex. A-1).

Petitioner stated that after he stopped taking the drugs he realized that he had been "railroaded" into the prison system and he started to do some legal research and obtain help from other inmates. He said that it was at about the same time that he found out about the AEDPA (D.E. 16, p. 8).

In August and September 2003 petitioner wrote letters to the state court clerk to find out his conviction date but never received a response (D.E. 16, p. 8 and Ex. A-2). On November 13, 2003 petitioner filed an application for free transcripts and a record. He did not know his date of conviction, but guessed it to be March 19, 2003. The trial court granted his application for free transcripts (although he never actually received them) and from then on, petitioner assumed his date of conviction was March 19, 2003 (D.E. 16, pp. 8-9).

Even looking at the facts in the light most favorable to petitioner, by June 2003 the side effects of the drugs were wearing off and he was beginning to do legal research and obtain legal advice form other inmates and, most importantly, he learned about AEDPA. At that point he had almost nine months in which to file his habeas petition, but waited until the deadline had almost passed to file his state court petition. Had petitioner been suffering the side effects of his medication until shortly before his deadline, he would have a stronger case. But, absent a showing that he diligently pursued his application after June of 2003 and still could not complete it on time, equity does not require tolling. Fisher, 174 F.3d at 716.

Also, even if petitioner thought the date of his final conviction was March 19, 2003, the limitations period would have run on April 19, 2003. Adding the 170 days of time during which his state habeas petition was pending would have made October 6, 2004 his deadline to file in federal court. Because he did not file his federal petition until October 19, 2004, it still would be time-barred.

## B. Certificate of Appealability

The Supreme Court has stated that the showing necessary for a Certificate of Appealability ("COA") is a substantial showing of the denial of a constitutional right. Hernandez v. Johnson, 231 F.3d 243, 248 (5th Cir. 2000)(citing Slack v. McDaniel, 529 U.S. 473, 483-484 (2000)).

Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further.  See Clark v. Johnson, 202 F.3d 760, 763 (5th Cir. 2000).  Specifically, where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack, 529 U.S. at 484.  A determination of the merits of a claim should not be part of the decision to issue a COA.  Rather, it is the debatability of the underlying constitutional claim, rather than its resolution, that controls whether a COA should issue.  Miller-El v. Cockrell, 537 U.S. 332, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

### **RECOMMENDATION**

It is respectfully recommended that respondent's motion for summary judgment (D.E. 14) be granted.  Petitioner's application for habeas corpus relief should be DISMISSED as time-barred.  It is further recommended that if petitioner seeks a certificate of appealability, it be denied.

Respectfully submitted this 4th day of May, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (1996) (en banc).